UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PENELOPE HINTON and
MICHIGAN PAIN MANAGEMENT,

          Plaintiffs,

v.                              Case No. 15-13331

STATE FARM MUTUAL AUTOMOBILE    HON. TERRENCE G. BERG
INSURANCE COMPANY,                  HON. ELIZABETH A. STAFFORD

          Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. 6)

This case presents the question of whether a defendant insurance company who failed to assert its diverse citizenship when this case was originally filed in state court over a year ago may belatedly remove the case to federal court on the ground that Plaintiff acted in bad faith by intentionally obscuring that the true amount in controversy was over $75,000, as required for diversity jurisdiction. Because the Court finds that the statutory period for removing cases to federal court has run, and Defendant has failed to show that Plaintiff hid the true amount in controversy with the intent to prevent removal, Plaintiff's motion to remand this case to state court will be **GRANTED**.

This lawsuit was originally filed on August 28, 2014 in Wayne County Circuit Court by Plaintiff Penelope Hinton ("Plaintiff Hinton") (and later joined by

Intervenor Plaintiff Michigan Pain Management ["Intervenor Plaintiff"])[1] in order to challenge Defendant State Farm Mutual Automobile Insurance Company's ("Defendant")[2] decision to deny Plaintiff Hinton certain no-fault benefits after an automobile accident. (*See* Dkt. 1, Ex. A, pp. 1, 2-5, 8.)[3]

Over a year later, on September 22, 2015, Defendant removed on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. 1, ¶ 15.) Defendant asserts that despite the fact that over a year has passed since the suit was filed, removal was timely pursuant to 28 U.S.C. § 1446(b)(3) because it removed within 30 days of first discovering that this case had become removable. (Dkt. 1, ¶ 14.)

Plaintiff Hinton opposes removal on several grounds. (*See* Dkt. 6.) In her September 25, 2015 motion to remand, Plaintiff Hinton argues that removal was inappropriate because: (1) the amount in controversy did not exceed $75,000 at the time the complaint was filed; (2) Defendant did not remove within the 30-day window allowed under 28 U.S.C. § 1446(b)(3)[4]; and (3) Defendant did not remove within the one-year deadline established in 28 U.S.C. §1446(c)(1). (*See id.*) The

---

[1] On February 1, 2015, Intervenor Plaintiff filed its intervening complaint against Defendant alleging unpaid medical bills. (Dkt. 1, Ex. C.)

[2] There were originally three Defendants, but two, both undisputedly Michigan citizens, were dismissed by the state court on April 29, 2015. (Dkt. 2, Ex. F, pp. 182-83.)

[3] In her complaint, Plaintiff Hinton alleges an unspecified amount of damages in excess of $25,000. (Dkt 1, Ex. A, p. 8.) Plaintiff Hinton also alleges that Defendant State Farm is a "Michigan insurance corporation licensed to do business in the County of Wayne, State of Michigan" (Dkt. 1, Ex. A, ¶ 2.) In other words, she alleges that both Plaintiff Hinton and Defendant are citizens of the same state. In its answer, Defendant pleads "no contest" to this allegation. (Dkt. 11, Ex. 7, ¶ 2.) Defendant did not assert citizenship of a different state until it filed its response brief to Plaintiff Hinton's motion to remand on October 8, 2015. (Dkt. 8, p. 8). It is undisputed that the other two Defendants, dismissed from this case prior to removal, were both Michigan citizens. (*See* Dkt. 1, Ex. A, ¶¶ 3-4.)

[4] Plaintiff Hinton's Counsel conceded this argument at the motion hearing on November 18, 2015, therefore the Court will not address it in this order.

Court heard oral argument after the parties fully briefed the matter on November 18, 2015 in Detroit, Michigan. (*See* Dkts. 6-8.)

After carefully considering the parties' arguments and evidence presented in their briefs and at the hearing, the Court finds that Defendant has not established that Plaintiff Hinton acted in bad faith by *intentionally* concealing the true amount in controversy *for the express purpose of preventing removal* as required under 28 U.S.C. § 1446(c)(3)(b). Consequently, Defendant is not exempt from the one-year statute of limitations for removal established in 28 U.S.C. § 1446(c)(1). Plaintiff Hinton's motion to remand will therefore be **GRANTED** and this case will be **REMANDED** to Wayne County Circuit Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Penelope Hinton had an auto accident on March 15, 2015 in Canton, Michigan. (Dkt. 1, Ex. A, ¶ 6.) Plaintiff Hinton is a Michigan resident who had a no-fault automobile insurance policy with Defendant when the accident occurred. (*Id.* at ¶¶ 1, 9.) After Defendant refused to pay certain no-fault benefits under the policy, Plaintiff Hinton filed suit in Wayne County Circuit Court on August 28, 2014. (*See id.* at ¶ 12.) From August 2014 until September 2015, the parties engaged in extensive discovery and motion practice in state court. (*See* Dkt 2; Dkt. 8, Exs. B-E.)

Plaintiff Hinton originally sued three Defendants. Defendants Kyle Ording and Multiband Incorporated, both undisputedly Michigan citizens, were dismissed from this case prior to removal. (*See* Dkt. 1, Ex. A, ¶¶ 3-4; Dkt. 2, Ex. F, pp. 182-83.)

Plaintiff Hinton also sued Defendant State Farm. Plaintiff Hinton's complaint alleges that Defendant State Farm is a "Michigan insurance corporation licensed to do business in the County of Wayne, State of Michigan." (Dkt. 1, Ex. A, ¶ 2.) To this paragraph of the complaint, Defendant pled "no contest." (Dkt. 11, Ex. 7, ¶ 2.) Nothing in the record indicated that Defendant was anything other than a Michigan citizen until Defendant asserted in its October 8, 2015 remand opposition brief that it is in fact an Illinois company.[5] (Dkt. 8, p. 8).

Intervenor Plaintiff asserts in its complaint that it is "a corporation licensed to conduct business under the laws of the State of Michigan." (Dkt. 1, Ex. C, ¶ 1.) Intervenor Plaintiff filed its intervening complaint on February 1, 2015, requesting payment for medical expenses it alleges Defendant is obligated to pay under Plaintiff Hinton's insurance policy. (*See* Dkt. 1, Ex. C.)

In her complaint, Plaintiff Hinton claims an unspecified amount in damages "in excess of $25,000 together with court costs and attorney fees." (Dkt 1, Ex. A, p. 8.) Plaintiff Hinton submitted a "signed statement of damages claimed as of August 28, 2014" attached to her motion to remand as proof of her assertion that she was claiming less than $75,000 in damages at the time she filed her complaint. (Dkt 6, Ex. 2.) This document itemizes her outstanding medical bills ($24,822.65) and attendant care benefits ($20,160.00) through August 28, 2014 for a subtotal of $44,982.65. (*Id.*) Plaintiff Hinton also includes $5,397.92 in no-fault interest and

---

[5] At oral argument, Defense Counsel admitted that this was an oversight, but claimed that the citizenship of State Farm was well known to be Illinois. He also conceded that this oversight was not corrected prior to filing the response brief on October 8, 2015. Plaintiff's Counsel asserted that until reading Defendant's response brief, he was unaware Defendant was not in fact a Michigan citizen.

4

$16,793.52 in attorney fees for a total of $67,174.09. (*Id.*) The document is dated September 25, 2015, and Defendant claims never to have received or reviewed it before it appeared as an exhibit to Plaintiff Hinton's motion to remand. (Dkt. 8, p. 8, n. 2.) The document does not appear among the pleadings served upon Defendant prior to removal. (*See* Dkt. 2.)

Defendant served Plaintiff Hinton with interrogatories and its request for production of documents in October 2014. (*See* Dkt. 8, Ex. B.) Plaintiff Hinton responded on December 5, 2014. (*See* Dkt. 8, Ex. D.) In response to Defendant's request that Plaintiff Hinton list and document her unpaid medical expenses, and provide a Bill of Particulars, Plaintiff Hinton answered "will provide." (Dkt. 8, Ex. D, pp. 18, 28-29.) When asked whether she was receiving attendant care and replacement services, Plaintiff Hinton responded that these services were being provided by her daughter, Geraldreese Hinton.[6] (*Id.* at 21-22.) With respect to her income tax and medical records, Plaintiff Hinton authorized Defendant to access that information. (*Id.* at 29.) Defendant never filed a motion to compel or otherwise raised any discovery issues with the state court.

On August 18, 2015, Plaintiff Hinton sent Defendant her case evaluation summary and brief in support. (Dkt. 6, Ex. 3.) This summary itemizes Plaintiff Hinton's damages as accrued through September 10, 2015.[7] (*See id.*) In her case

---

[6] During oral argument, the parties confirmed that Plaintiff Hinton admitted in her December 2014 deposition that her daughter was providing attendant care services at a rate of $15 per hour for up to five hours a day, five days a week.

[7] The parties were scheduled for a case evaluation in state court before a panel of three evaluators on September 10, 2015. (*See* Dkt. 6, Ex. 3, p. 1.) Plaintiff Hinton, in her case evaluation summary, requests that the panel "return an evaluation in the amount of $211,606.77 against Defendant." (*Id.*

5

evaluation, Plaintiff Hinton claims a total of $141,700.96 in unpaid first-party benefits: (1) $64,196.96 in medical bills; (2) $10,564.00 in wage loss benefits; (3) $65,520.00 in attendant care benefits; and (4) $1,420.00 in replacement services. (*Id.* at 6.) In addition, Plaintiff Hinton claims $17,004.12 in no-fault interest and $52,901.69 in attorney fees for a grand total of $211,606.77. (*Id.* at 7.) Defendant received the case evaluation on August 28, 2015. (Dkt. 8, Ex. F.)

On September 22, 2015, Defendant removed this case to this Court on the basis of diversity jurisdiction. (*See* Dkt. 1.) Plaintiff Hinton filed her motion to remand on September 25, 2015. (Dkt. 6.) Plaintiff Hinton argues that Defendant's notice of removal is flawed substantively and procedurally. Plaintiff contends that the notice is substantively flawed because the amount in controversy requirement is not satisfied considering that at the time Plaintiff Hinton filed her lawsuit, she was seeking only $67,174.09 in damages. (*Id.* at 7.) Plaintiff further maintains that Defendant's notice of removal is procedurally flawed because it was not timely filed within the one-year statute of limitations established by 28 U.S.C. § 1446(c)(1). (*Id.* at 8-10.)

Defendant responded on October 8, 2015, arguing that removal is appropriate and timely. (Dkt. 8.) Defendant argues that removal is substantively valid because there is complete diversity and the amount-in-controversy requirement is satisfied

---

at 7.) In Michigan, case evaluation is available in civil actions where money or division of property is in issue. *See* MCR 2.403(A)(1). At least 14 days prior to the evaluation hearing, the parties must "serve a copy of the case evaluation summary and supporting documents" on each other. MCR 2.403(I)(1)(a). "The case evaluation summary shall consist of a concise summary setting forth that party's factual and legal position on issues presented by the action." MCR 2.403(I)(3). After the hearing, the panel will submit its evaluation of the case to the parties in writing within 14 days. MCR 2.403(K)(1). The parties may accept or reject the evaluation. MCR 2.403(L).

because Plaintiff Hinton's case evaluation summary (received by Defendant on August 28, 2015) alleges damages totaling $141,700.96. (*Id.* at 7.)

Defendant further contends that the one-year statute of limitations imposed on certain removal actions does not apply because Plaintiff Hinton acted in bad faith by waiting until she filed her case evaluation summary to reveal that her damages had accrued and actually exceeded $75,000. (*Id.* at 9.) For the reasons explained below, the Court disagrees.

## II. ANALYSIS

There is no dispute that Defendant removed this case over a year after it was filed in state court. The parties initially disputed whether removal was timely pursuant to both 28 U.S.C. §§ 1446(b)(3) (the requirement that removal must be made within 30 days of when the Defendant learns that it may be removed) and (c)(1) (the requirement that that removal must be made within 1 year of the date of filing, unless the Court finds the Plaintiff acted in bad faith to prevent removal), and whether the amount in controversy requirement had been met. At the hearing, however, Plaintiff Hinton's Counsel withdrew his argument that Defendant failed to meet the 30-day requirement of 28 U.S.C. §§ 1446(b)(3). Accordingly, the Court will only address whether the amount-in-controversy requirement is satisfied and whether removal was timely pursuant to the one-year-unless-bad-faith-by-Plaintiff limitations period of 28 U.S.C. § 1446(c)(1).

## A. Legal Standard

Federal courts are vested with limited jurisdiction. Unless jurisdiction is authorized by the Constitution or other federal laws, federal courts lack the power to adjudicate legal disputes. In general, a civil case filed in state court may be removed to federal court if the action could have been brought originally in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Defendant bears the burden of establishing that removal is proper. *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). It is well-established that "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999) (citation omitted).

In this case, Defendant removed on the basis of diversity jurisdiction, which exists where the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. 28 U.S.C. § 1332. Diversity jurisdiction can be only be invoked in instances of "complete diversity," that is, where none of the Plaintiffs reside in the same state as any of the Defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The parties agree that complete diversity of citizenship existed in this case when it was removed, although they dispute when and whether Plaintiff Hinton was aware that it existed. The parties also dispute whether the amount-in-controversy requirement is satisfied and whether Plaintiff's Counsel intentionally concealed information regarding the true amount in controversy in order to prevent removal.

In addition, the parties disagree on the issue of whether Defendant's notice of removal was timely filed. To show timeliness, Defendant must overcome two temporal bars. Under 28 U.S.C. §1446(b)(3), Defendant has 30 days to file for removal after the receipt of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." At oral argument, Plaintiff Hinton conceded that Defendant filed the notice of removal within 30 days of receiving notice that it could be removed.

Pursuant to 28 U.S.C. §1446(c)(1), however, "[a] case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Section 1446(c)(3)(b) adds that if notice of removal is filed more than one year after commencement of the action, it will be deemed bad faith for a Plaintiff to deliberately fail "to disclose the actual amount in controversy to prevent removal." In other words, a Plaintiff will be estopped from asserting that the one-year limitation applies if he or she has acted in bad faith to thwart removal by depriving Defendant of information necessary to realize prior to the one-year deadline that the case was removable.

To remain in federal court, Defendant must therefore overcome Plaintiff Hinton's substantive and procedural challenges to its notice of removal.

### A. The Amount-in-Controversy Requirement is Satisfied

Plaintiff Hinton challenges the substance of Defendant's notice of removal on the grounds that the amount-in-controversy requirement has not been satisfied because she was seeking only $67,174.09 in damages when she originally filed her complaint. (Dkt. 6, p. 7.)

This Court's jurisdiction, however, is determined *as of the time of removal.* *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Accordingly, this Court will consider evidence showing the amount in controversy that existed at the time the case was removed to federal court. *Id.* at 871–72; see also *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). At the time of removal, a removing Defendant must show by a "preponderance of the evidence" that the amount in controversy exceeds the jurisdictional threshold. *See Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *see also Nowicki-Hockey v. Bank of Am., N.A.,* 593 F. App'x 420, 422 (6th Cir. 2014).

As of August 18, 2015, by Plaintiff Hinton's own admission in her motion to remand, she was seeking damages amounting to $141,700.96 plus $17,004.12 in no-fault interest and $52,901.69 in attorney fees. (Dkt. 6, p. 7.) Defendant removed this case approximately five weeks later. (*See* Dkt. 1.) Given that benefits continued to accrue beyond the date the case evaluation summary was compiled, the record demonstrates that the amount in controversy was more likely than not $141,700.96 or greater when Defendant removed this case. Both parties agree that, regardless of

10

Defendant's initial failure to announce its diverse citizenship, it is in fact a citizen of Illinois. The requirements for diversity jurisdiction under 28 U.S.C. §1332(a) have thus been met.

## B. Defendant's Notice of Removal was Untimely under Section 1446(c)(1) because Plaintiff Hinton Did Not Act in Bad Faith to Prevent Removal

Although diversity jurisdiction was present at the time of removal, Defendant has not shown that the so-called bad faith exception to the one-year deadline for removal applies in this case. On Plaintiff Hinton's initial pleading, this case was not removable given that the amount in controversy was approximately $44,982.65 and (as far as Plaintiff knew) diversity jurisdiction did not exist given that at least two Defendants were Michigan citizens. (Dkt. 6, Ex. 2.) Plaintiff Hinton concedes that the notice of removal was filed within 30 days of receiving Plaintiff's case evaluation brief with the higher damage figures, but nevertheless maintains that removal was ultimately untimely because it was filed over a year after this action was brought. *See* 28 U.S.C. § 1446(c)(1).

The parties do not dispute that removal occurred over a year after Plaintiff Hinton first filed her complaint. (*See* Dkt. 1; Dkt. 1, Ex. A.) Defendant argues, however, that Plaintiff Hinton is estopped from asserting that the § 1446(c)(1) one-year deadline applies because Plaintiff Hinton acted in bad faith by delaying her disclosure of the true amount in controversy until she filed her case evaluation summary nearly a year after filing her complaint. (Dkt. 8, pp. 11-12.) Defendant thus asserts that Plaintiff intentionally withheld information related to the amount in controversy for the express purpose of preventing removal.

11

In support of its position, Defendant argues that Plaintiff Hinton ignored Defendant's written discovery requests "for a Bill of Particulars and/or an itemized list of unpaid bills." (Dkt. 8, p. 12.) Defendant states that these requests were served promptly after suit was filed in state court, and that Plaintiff Hinton promised to provide the requested materials but never did, thereby violating her obligation to supplement her responses as required under Michigan Court Rule 2.302.[8] (*Id.*) According to Defendant, it did not obtain a Bill of Particulars or other "documentation outlining her alleged damages" until it received Plaintiff Hinton's case evaluation brief on August 28, 2015, "exactly one year after the commencement of this suit." (*Id.*)

Plaintiff Hinton, in her reply brief, argues that she "could not provide bills to Defendant that she did not possess" when she answered Defendant's request for production of documents on December 5, 2014. (Dkt. 11, p. 8.) Instead, she provided "Defendant with signed authorizations on December 5, 2014 allowing Defendant to request and obtain all of her medical records and bills." (Dkt. 11, p. 8; Dkt. 11, Ex. 6.) Plaintiff Hinton also notes that Defendant "promptly received possession of the bills from Advanced Surgery Center, as evidence from Defendant's Explanation of Review form dated August 6, 2015." (Dkt. 11, p. 8; Dkt. 11, Ex. 5.) Finally, Plaintiff Hinton asserts that "Defendant was well aware of Plaintiff's attendant care claim"

---

[8] Michigan Court Rule 2.302(E) does not impose a general duty to seasonably supplement a discovery response so long as the initial response was complete and correct when made. Under Michigan Court Rule 2.302(E)(1)(b)(ii), however, a party must supplement a response where the "response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment."

12

because Plaintiff testified in her deposition that her daughter was providing attendant care services at a rate of $15.00 per hour.[9] (Dkt. 11, p. 8.)

Even if taken as true, Defendant's assertions do not establish that Plaintiff Hinton purposefully concealed information related to the amount in controversy for the express purpose of preventing removal. The "bad faith exception" was added to § 1446(c)(1) in 2011. Although the Sixth Circuit has not ruled on the meaning of "bad faith" in the amended statute, federal courts that have examined the new language agree that the issue is whether the Plaintiff engaged in intentional conduct intended to deny the Defendant the chance to remove the case to federal court. *See Comer v. Schmitt*, No. 2:15-CV-2599, 2015 WL 5954589, at *2-4 (S.D. Ohio Oct. 14, 2015)*; Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014); *Ehrenreich v. Black*, 994 F. Supp. 2d 284 (E.D. N.Y. Jan. 21, 2014); *Taylor v. King*, No. 5:12–CV–1, 2012 WL 3257528 at *4 (W.D. Ky. Aug. 8, 2012).

Bad faith, for the purposes of § 1446(c)(1), need not amount to malicious or unsavory conduct. *Comer,* 2015 WL 5954589, at *4. The crux of the Court's inquiry, then, is whether Plaintiff Hinton engaged in intentional action or inaction for the express purpose of preventing Defendant from removing the case before the expiration of the one-year period. To this question, the Court concludes that Plaintiff Hinton did not.

Defendant's failure to correct Plaintiff Hinton's misperception that Defendant was a Michigan citizen is the death knell of its position on this question. In her

---

[9] No transcript of this deposition was provided to this Court, but the parties confirmed at the motion hearing that Plaintiff Hinton did provide this information at her December 2014 deposition.

complaint, Plaintiff Hinton, a Michigan citizen herself, alleged that Defendant was a Michigan corporation, to which Defendant answered, "no contest." (*See* Dkt. 1, Ex. A, ¶ 2; Dkt. 11, Ex. 7, ¶ 2.) At the hearing, Defense Counsel admitted that this answer was an oversight on his part, but he never attempted to correct it until filing his response to the motion for remand. Moreover, even if Plaintiff Hinton had been aware that Defendant was not a Michigan citizen, she initially filed her complaint against three Defendants, two of which are undisputedly Michigan citizens. (Dkt. 1, Ex. A, ¶¶ 2-4.) Complete diversity thus could not have existed in this case until these two Michigan defendants were dismissed in April 2015. (Dkt. 2, Ex. F, pp. 182-83.)

In essence, Plaintiff Hinton initiated an action that she had no reason to believe involved any parties other than Michigan citizens. Only after Defendant's response to this motion was filed did Plaintiff Hinton become aware that Defendant was from a different state. When the record shows that Plaintiff Hinton was not even aware that complete diversity existed and or that removal was legally permissible, there is no basis to conclude that Plaintiff Hinton or her Counsel were acting in bad faith to prevent Defendant from removing this case by concealing information related to the amount in controversy. They would have no motive to hide the amount in controversy – for the purpose of avoiding removal – if they believed removal was impossible regardless of the amount in controversy.

Defendant's primary argument, however, is that Plaintiff Hinton prevented removal by failing to indicate the true amount of her damages claim until

14

Defendant received the case evaluation summary "exactly one year after the commencement of this suit." (Dkt. 8, p. 7.) Defendant relies on Michigan Court Rule 2.302(e)(1)(b) for this proposition (*Id.*), which imposes a duty on parties to supplement their discovery responses if information is later obtained indicating that the original responses were incorrect when made or "no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment."

Defendant points to Plaintiff Hinton's "will provide" response to discovery requests for information about her medical and other related bills, and asserts that these promised materials never materialized. (*Id.*) In particular, Defendant emphasizes the lack of documentation in support of Plaintiff Hinton's claim for attendant care benefits, which totaled $65,520.00 at the time her case evaluation summary was filed. (Dkt. 8, Ex. E, p. 7.) Defendant asserts that it was unaware that Plaintiff Hinton would be claiming this amount until it received the case evaluation summary, and that this is the claim that raises the amount in controversy above the threshold amount required for removal.

These facts are insufficient to establish conduct in bad faith for the *express purpose of preventing removal*. First, as discussed at the hearing and as indicated in Plaintiff Hinton's reply brief, not all of Plaintiff Hinton's medical bills were available to her until mid-2015 when she compiled and submitted her case evaluation summary. (Dkt. 11, Ex. 5.) Moreover, Plaintiff Hinton signed an

15

authorization form allowing Defendant access to all her medical records and bills on December 5, 2014. (Dkt. 11, p. 8; Dkt. 11, Ex. 6.)

Finally, with respect to attendant care costs, the parties acknowledge that Plaintiff Hinton revealed as early as December 2014 that her daughter was providing her attendant care at a rate of $15 an hour for approximately five hours a day, five days a week. While calculating the total amount owed for attendant care would have been an exercise in speculation, Defendant was at least aware that Plaintiff Hinton was claiming to have received this service at a specific rate. An insurer such as Defendant could easily have extrapolated from this information that the attendant care benefit would continue to accrue, and the amount in controversy would thus increase.

Although Plaintiff Hinton could have more clearly specified the amount of damages sought, there is no proof of any intent to mislead in order to prevent removal. If Defendant was concerned about Plaintiff Hinton's failure to supplement her discovery responses, Defendant could have filed a motion or compel or otherwise raised this issue with the state court. Failure to clearly state the damages sought, without more, falls short of showing bad faith concealment of the amount in controversy. *See Educ. Mgmt. Servs., LLC v. Cadero*, No. 5:15-CV-686 RP, 2015 WL 6690401, at *5 (W.D. Tex. Nov. 2, 2015) (failing to clearly state the damages sought falls short of actively concealing the amount in controversy where Plaintiff did not state its damages in its Rule 26 disclosures or in response to an interrogatory because it was still conducting an investigation.) There is simply no evidence that

16

Plaintiff Hinton engaged in any action or inaction *specifically designed to defeat removal,* as must be shown to excuse the one-year limitation of 28 U.S.C. § 1446(c)(1).

Because the Court makes no finding that Plaintiff Hinton or her Counsel acted in bad faith to prevent removal, the one-year limitations period applies. Defendant's notice of removal, filed more than one year after the complaint, is therefore barred. The state court has already done extensive work on this case and so have the parties. That work should continue in its original forum. Plaintiff Hinton's motion to remand must be granted.

### III. CONCLUSION

Accordingly, Plaintiffs' motion to remand (Dkt. 6) is **GRANTED**, and the case is hereby **REMANDED** to Wayne County Circuit Court pursuant to 28 U.S.C. § 1447(c).

**SO ORDERED.**

                                        s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE

Dated: December 21, 2015

### Certificate of Service

I hereby certify that this Order was electronically submitted on December 21, 2015, using the CM/ECF system, which will send notification to each party.

                                        By: s/A. Chubb
                                              Case Manager